IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2022

**STATE OF TENNESSEE v. MARLON J. JOHNSON, JR.**

**Appeal from the Criminal Court for Sullivan County**
**No. S52180, S52241        James F. Goodwin, Jr., Judge**

———————————————————

**No. E2022-00098-CCA-R3-CD**

———————————————————

The Defendant-Appellant, Marlon J. Johnson, Jr., appeals the revocation of his six-year probationary sentence for two counts of aggravated burglary, domestic assault, misdemeanor assault, misdemeanor theft, and misdemeanor false imprisonment. The Defendant conceded the probation violation before the trial court and on appeal. Accordingly, the sole issue presented for our review is whether the trial court erred in ordering the Defendant to serve the balance of his sentence in confinement. Upon review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., P.J. and ROBERT W. WEDEMEYER, J., joined.

Andrew J. Gibbons, District Public Defender, Kendall Stivers Jones (on appeal), Wesley Mink (at trial), and Leslie Hale (at trial) Assistant District Public Defenders, for the Defendant-Appellant, Marlon J. Johnson, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; H. Greely Well, Jr., District Attorney General; and Kaylin Redner-Hortenstein, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On September 20, 2006, the Defendant entered a guilty plea in case number S52180 to aggravated burglary, misdemeanor assault, theft of property valued at $500 or less, and misdemeanor false imprisonment. The Defendant also entered a guilty plea in case number S52241 to aggravated burglary and domestic assault. For these offenses, he received a total effective sentence of six years to be served on supervised probation. The judgment forms also reflect that the Defendant's effective six-year probationary sentence was to be

served consecutively to a previously imposed sentence in Virginia. The Defendant's Tennessee probationary period was not scheduled to begin until after completion of his cases in Virginia. On July 7, 2021, a probation violation report was filed, and it provides a detailed history of the Defendant's supervision, which we find instructive. On April 9, 2013, a warrant was issued by the trial court in Tennessee because the Defendant had absconded from probation in Virginia. The report characterized the Defendant's Tennessee case as a "tracking case" at the time of the warrant. Nevertheless, on August 3, 2017, the Defendant's Tennessee probation was "revoked/reinstated," and he was ordered to "start over" with an expiration date of August 3, 2023. The factual circumstances of the first violation for absconding were not included in the report. On August 14, 2017, the Defendant reported to the Tennessee probation authorities and was advised of the terms and conditions of probation. On August 9, 2018, a transfer request to Pennsylvania was submitted and subsequently approved on August 30, 2018. The Defendant had been under the supervision of Pennsylvania Probation and Parole from August 30, 2018, to May 15, 2021.

Regarding the instant violation, the July 2021 probation violation report alleged that the Defendant committed a technical violation by absconding from probation again. The Defendant's Pennsylvania probation officer reported that on May 6, 2021, the Defendant absconded from GEO Scranton, a half-way house, and when he reported to his probation officer the next day, the Defendant tested positive for cocaine. The probation officer directed the Defendant to report to Just Believe, another in-patient drug treatment facility, with instructions to successfully complete treatment, file the appropriate confidential paperwork, and not "to pull those forms." On May 15, 2021, the Defendant signed himself out of Just Believe against staff advice and in violation of his probation officer's instructions. The probation officer also advised that the Defendant did not have an approved residence, and his whereabouts were unknown at that time. Based on the violation report, the trial court issued a warrant for the Defendant's arrest on July 7, 2021, alleging the following violations: (1) failure to inform his probation officer before changing his residence or employment, (2) failure to allow his probation officer to visit his home or employment site (3) failure to carry out all instructions of probation officer; and (4) failure to report truthfully and fully to his probation officer. The arrest warrant also alleged that the Defendant violated his probation by using legal intoxicants.

At the top of the January 11, 2022 sentencing hearing, the Defendant stipulated to the facts asserted in the arrest warrant and entered a guilty plea to violating the terms of his probation. In proceeding to determining the consequences for violating his probation, the Defendant testified and explained that his Tennessee cases originated in 2006, but his probation did not start in Tennessee until August of 2017, because it was consecutive to a nine-year sentence he was serving in the Virginia State Prison. The Defendant testified that he had a prior probation violation for "dirty urine" before starting the present probation

sentence. He told his probation officer that he "needed help," and as a result, he was recommended to attend ADAPPT[1], a Department of Correction drug facility based in Pennsylvania. The Defendant admitted that shortly after completing sixty days of inpatient treatment at ADAPPT, he relapsed and used drugs again. A letter from ADAPPT was introduced as an exhibit, confirming that the Defendant successfully completed treatment from March 4, 2021, through May 3, 2021. The Defendant was placed in GEO Scranton upon completion of the ADAPPT program.

The Defendant explained the circumstances of his second absconding violation as follows. On May 6, 2021, the Defendant was ten to fifteen minutes late to report to the probation office because he was "driving around trying to figure out … where I lived at, where the halfway house was." It was his understanding that if he was more than five minutes late to report to probation, he was to return to his listed residence and report to probation again the next day because being late was automatically considered absconding. When the Defendant reported the next day, he was given a urinalysis test, and he tested positive for cocaine. The Defendant asked his probation officer to allow him to attend Just Believe, a different rehabilitation facility, and his probation officer approved the request. The Defendant said that he reported to Just Believe, but he left shortly thereafter because his roommate was "shootin up," and he chose to leave rather than report the misconduct of his roommate. The Defendant testified that he assumed he would be in trouble for leaving and went home to talk to his family about it. He knew that the authorities would soon come to his home and take him back to Tennessee to answer for the violation. The Defendant was arrested in Pennsylvania in September of 2021. While the Defendant acknowledged significant strides in his struggle against drug addiction, he agreed that he remained a drug addict. He stated that he had approval from the director of ADAPPT to attend the inpatient drug treatment program for another thirty-five-day period. The Defendant asserted that he joined Miller Motte, an online college, to earn a bachelor's degree in Business Administration and that all his fines in the present case were paid. Ultimately, the Defendant asked the court to place him back on probation with the stipulation that he go back to the ADAPPT program.

On cross-examination, the Defendant admitted that he violated the terms of his probation twice by using cocaine and both times he was given a break to attend a rehabilitation drug facility. The Defendant stated that before he left Just Believe, he did not tell anyone that his roommate was "shootin up" nor did he ask to have another roommate. The Defendant explained that he was unable to contact his probation officer after leaving Just Believe because they were on vacation. He did not go to the Probation Office because

---

[1] The probation revocation hearing transcript refers to the program as "ADAPT," but the program's proper spelling is ADAPPT, as this reflects the spelling indicated in Exhibit 1, a letter from the assistant facility director of programs at GEO Reentry Services.

"they were not letting anybody come to the office due to Covid," but he called and left a message with the secretary.

In closing, defense counsel argued the Defendant should be placed back on probation because (1) he had not been convicted of a crime since 2006, (2) he had a wife and child to care for, (3) he had been accepted into a drug treatment facility, (4) he had enrolled in an online school, and (5) he had made substantial payments on his court costs and fees. The State argued that the Defendant should be required to serve the remainder of his sentence in confinement because (1) the Defendant testified negatively about his prior experiences in two different treatment programs, (2) based on his two "dirty" drug screens, and (3) his prior violation for absconding. In ordering the Defendant to serve his sentence in confinement, the trial court found that the Defendant had a prior violation for absconding. The trial court acknowledged that the first violation for absconding was while the Defendant was on Virginia probation; however, that violation also violated his Tennessee probation even though the Tennessee case was not active. The trial court expressed concern on the instant violation that the probation authorities had not had contact with the Defendant in over five months or since May of 2021. The trial court stated, "[t]his being the second warrant for absconding, [the Defendant has] displayed an inability, or unwillingness to comply with release in the community." The Defendant's probation was fully revoked, and he was ordered to serve the balance of his six-year sentence in confinement. A probation revocation order was entered January 11, 2022, and the Defendant timely filed a notice of appeal.

**ANALYSIS**

On appeal, the Defendant contends that the trial court abused its discretion in revoking the Defendant's probation in full because "it failed to make appropriate findings as to the reasons justifying a full revocation and failed to consider Mr. Johnson's willingness to complete rehabilitative treatment and acceptance into a treatment program." The Defendant asserts that because the trial court placed insufficient findings on the record relating to the consequence imposed, this Court should review the trial court's decision de novo, reversing and remanding for entry of judgment reflecting partial revocation and reinstatement of probation with an order to complete a rehabilitative program. Alternatively, under an abuse of discretion review, the Defendant maintains that the trial court's decision should be reversed because "full revocation was not a conscientious and intelligent decision." In response, the State contends that the trial court properly exercised its discretion when it ordered the Defendant to serve the balance of his sentence in confinement. The State submits that because the trial court placed sufficient findings on the record, this court should review the issues for an abuse of discretion with a presumption of reasonableness. Further, the State asserts that "the record supports the trial court's finding that the Defendant should serve the balance of his sentence in confinement because

- 4 -

he had repeatedly absconded from probation, displaying 'an inability [or] unwillingness to comply with release in the community.'" We agree with the State.

In Dagnan, the Tennessee Supreme Court clarified that a probation revocation proceeding involves a two-step inquiry, both of which are distinct discretionary decisions that must be reviewed and addressed on appeal. State v. Dagnan, 641 S.W.3d 751, 753, 757-58 (Tenn. 2022). "If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310." Tenn. Code Ann. § 40-35-311. Upon finding that a defendant violated the terms of his or her probation, a trial court "must determine (1) whether to revoke probation, and (2) the appropriate consequence to impose upon revocation." Dagnan, 641 S.W.3d at 753. Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 646-47 (Tenn. 1999); Tenn. Code Ann. §§ 40-35-308, -310, -311.

If the trial court "places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record," the standard of review on appeal is abuse of discretion with a presumption of reasonableness. Dagnan, 641 S.W.3d at 759. As it relates to factual findings, "'appellate courts cannot properly review a sentence if the trial court fails to articulate in the record its reasons for imposing the sentence.'" Id. at 758 (quoting State v. Bise, 380 S.W.3d 682, 705 n.41 (Tenn. 2012)). "It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." Id. (citing Bise, 380 S.W.3d at 705-06). The appellate court may conduct a de novo review if a trial court fails to place sufficient reasoning for the probation revocation on the record and the record is sufficient for the court to do so. Id. at 759 (citing State v. King, 432 S.W.3d 316, 327-28 (Tenn. 2014)). To establish an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)).

Upon our review, we conclude the trial court sufficiently recorded the facts that it considered and its reasoning in fully revoking the Defendant's sentence. The determination of the trial court is therefore afforded a presumption of reasonableness and reviewed for an abuse of discretion. Here, the Defendant entered a guilty plea to the probation violation and stipulated to the facts as included in the probation violation warrant. The entry of the guilty plea triggered the trial court's statutory duty to determine the consequence for the violations. With this in mind, the trial court conducted a hearing and considered the

testimony of the Defendant and argument of counsel. For his second probation violation for absconding, the Defendant explained that he understood the policy concerning reporting late to the probation office and reporting the next day. He acknowledged on this occasion he had relapsed and used drugs again. The Defendant further acknowledged he was given "a break" and allowed to check-in to a rehabilitation facility; however, he checked himself out two weeks later on May 15, 2021, in direct violation of the instructions from his probation officer. The Defendant then chose not to report to his probation officer and chose to spend time with his family. He testified he chose to spend time with his family because he knew he would have to answer for his conduct at some point, and he waited for police to arrest him at his home. In imposing confinement, the trial court expressed its concern that this was the Defendant's second violation for absconding, explaining that the Defendant showcased an "inability, or unwillingness to comply with release in the community." The trial court further noted that when the Defendant absconded from probation in May of 2021, he was not picked up in Pennsylvania until September of 2021. See e.g., State v. Tiffany Clegg, No. E2015-01134-CCA-R3-CD, 2016 WL 944919, at *2 (Tenn. Crim. App. Mar. 14, 2016) (affirming revocation of probation based on absconding and noting seriousness of violation because an offender cannot be properly supervised which prevents drug screens, employment verification, etc.).

On appeal, the Defendant argues his conduct was "not so egregious as to warrant a full revocation." In support, he acknowledges the instant violation as his second revocation for absconding but emphasizes the fact that he has had no violations in the eight-year period leading up to the instant violation and no criminal convictions since 2006. Based on this, he insists extension of his probation by one year should have been the preferred recourse when a probationer has had difficulty with recovery, even when he has "repeatedly and intentionally failed to comply with court-ordered treatment programming." Tenn. Code Ann. §40-35-308(a). In essence, the Defendant argues the trial court failed to consider the length of his successful probation period as grounds to extend his probationary period rather than impose confinement for the remainder of his sentence. Finally, citing State v. Mitchell, the Defendant argues that imposition of full confinement ignores whether incarceration would best serve the Defendant's and the public's interests. See State v. Mitchell, 810 S.W.2d 733, 736 (Tenn. Crim. App. 1991) ("We agree that a revocation decision is best tested by whether such an action would serve the ends of justice and be in the best interest of both the public and the defendant/appellant."). In our view, the trial court considered the length of the Defendant's successful probation, which was largely a function of his voluntary and knowing guilty plea. We also believe it significant to point out that the Defendant had been given the opportunity to avail himself of drug treatment but voluntarily withdrew from the program and made an intentional decision not to report back to his probation officer. Accordingly, we are unable to agree that the Defendant's interest and the interest of the public were not properly considered by the trial court. Because the Defendant has failed to establish that the trial court abused its discretion in

ordering him to serve the remainder of his sentence in confinement, he is not entitled to relief.

## **CONCLUSION**

Based on the foregoing, the judgment of the trial court is affirmed.


_____
CAMILLE R. MCMULLEN, JUDGE